UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

AMANDA HUNTER,                          )
                                        )  No. CV-05-0252-MWL
            Plaintiff,                  )
                                        )  ORDER GRANTING DEFENDANT'S
    v.                                  )  MOTION FOR SUMMARY JUDGMENT
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social                  )
Security,                               )
                                        )
            Defendant.                  )
                                        )

    BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on May 8, 2006. (Ct. Rec.
9, 14). Plaintiff Amanda Hunter ("Plaintiff") did not submit a
reply brief. Attorney Clifford King B'Hymer represents Plaintiff;
Special Assistant United States Attorney Stephanie R. Martz
represents the Commissioner of Social Security ("Commissioner").
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 4). After reviewing the administrative record and the
briefs filed by the parties, the Court **GRANTS** Defendant's Motion
for Summary Judgment (Ct. Rec. 14) and **DENIES** Plaintiff's Motion
for Summary Judgment (Ct. Rec. 9).
///

1                            **JURISDICTION**

2       On December 3, 2002, Plaintiff applied for Disability

3   Insurance Benefits ("DIB") alleging disability since June 26,

4   2002, due to fibromyalgia and hearing loss.  (Administrative

5   Record ("AR") 51-53, 61).  Her application was denied initially

6   and on reconsideration.  On January 26, 2005, Plaintiff appeared

7   before Administrative Law Judge ("ALJ") Paul Gaughen, at which

8   time testimony was taken from Plaintiff and vocational expert

9   Debra Uhlenkott.  (AR 259-294).  On March 10, 2005, the ALJ issued

10  a decision finding that Plaintiff was not disabled.  (AR 12-23).

11  The Appeals Council denied a request for review on June 27, 2005.

12  (AR 4-6).  Therefore, the ALJ's decision became the final decision

13  of the Commissioner, which is appealable to the district court

14  pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for

15  judicial review pursuant to 42 U.S.C. § 405(g) on August 18, 2005.

16  (Ct. Rec. 1).

17                      **STATEMENT OF FACTS**

18      The facts have been presented in the administrative hearing

19  transcript, the ALJ's decision, the briefs of both Plaintiff and

20  the Commissioner and will only be summarized here.  Plaintiff was

21  32 years old on the date of the ALJ's decision, has a high school

22  education and attended three years of college.  (AR 12, 67).

23  Plaintiff has past relevant work as a laboratory technician in a

24  food processing plant (light, semi-skilled), a bookstore clerk

25  (light, medium as performed, semi-skilled), and a cook/wait person

26  (light, semi-skilled).  (AR 85, 280).

27  ///

28  ///

1     At the administrative hearing held on January 26, 2005,
2  Plaintiff testified that she stands 5'1" tall and weighs 180
3  pounds.  (AR 266).  She testified that she has not worked since
4  June of 2002.  (AR 266).  She reported that her most significant
5  problem that interferes with her ability to work is constant pain
6  in her joints (elbows, shoulders, hips, knees, feet, hands and
7  back).  (AR 266).  She stated that the constant pain causes her to
8  be tired or fatigued, and she would not be a very reliable
9  employee because she would have to call in sick often.  (AR 266).
10 She indicated that she was in pain all the time, even when she is
11 not physically active.  (AR 267).

12     Plaintiff testified that she is able to walk two blocks
13 without having to take a break.  (AR 267).  She stated that when
14 she experiences discomfort from walking, she eases the pain by
15 sitting down for 15 to 20 minutes and elevating her feet.  (AR
16 268).  She stated that she sits about 80 percent of the day and
17 takes an afternoon nap in order to have energy in the evening to
18 make dinner for her husband.  (AR 268-269).  She reported that two
19 or three days a week she experiences so much pain that she is not
20 able to drive.  (AR 270).  She also stated that five or six days
21 per week her fatigue impairs her short-term memory for a large
22 portion of the day.  (AR 273).  However, she indicated that her
23 ability to concentrate remained "okay."  (AR 273).

24     Plaintiff testified that she can stand for only about 15
25 minutes before her knees and back bother her, and she is only
26 capable of sitting for 15 to 20 minutes at a time.  (AR 270-271).
27 She indicated that she could kneel for a while, but does not kneel
28 often, and can reach above shoulder level.  (AR 271-272).  She

- 3 -

stated that she is not able to bend at the waist, or push and pull for longer than one or two minutes at a time. (AR 271-272).

Plaintiff testified that she has problems with depression and anxiety and experiences panic attacks once or twice every two or three months. (AR 275-276). She reported that she also has tension headaches three or four times a week. (AR 277-278). She also has difficulty with hearing but is able to read lips. (AR 278).

Also giving testimony at the administrative hearing held on January 26, 2005, was vocational expert Debra Uhlenkott (AR 279-289). The ALJ gave Ms. Uhlenkott three different hypotheticals, and, as to each, the vocational expert testified there were jobs available which the hypothetical individual could perform despite the listed limitations. (AR 280-283).

On cross-examination, Ms. Uhlenkott testified that there were no unskilled or low-skilled jobs that would accommodate an individual's need to miss more than three days of work per month due to physical pain and marked fatigue. (AR 286). She additionally testified that if an individual must lay down at unpredictable intervals throughout the day, three or four times a day, at least 20 to 30 minutes at a time, there would be no jobs this individual could perform. (AR 288). Plaintiff's attorney suggested that these hypotheticals were based on limitations from a report administered by a Dr. Rushi. (AR 289). Plaintiff testified that, at the time of the administrative hearing, Dr. Rushi had been her primary care physician for about one month but that she had not seen Dr. Rushi prior to that period of time. (AR 289).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

///

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court

may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 13). At step two, the ALJ determined that Plaintiff has the severe impairments of fibromyalgia, pain disorder associated with psychological factors and a general medical condition, and bilateral hearing loss, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 18). The ALJ specifically found that Plaintiff's diagnosis of major depressive disorder was non-severe and reports of GERD and ganglion cyst in the right ankle appeared resolved and were also not severe impairments. (AR 17-18).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to preform light exertion work and that she would be further limited to only occasional bending,

stooping and kneeling, she has severe hearing impairments requiring the use of hearing aides but is capable of hearing work conversation but may be delayed as she reads lips, and should not work in dangerous industrial settings as she may not hear safety warnings.  (AR 21).

At step four of the sequential evaluation process, and based on her RFC and the vocational expert's testimony, the ALJ found that Plaintiff was able to perform her past relevant work as a gift/bookstore clerk and as a cook/wait person.  (AR 22).  Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 22-23).

<u>**ISSUES**</u>

Plaintiff contends that the Commissioner erred as a matter of law.  Plaintiff's primary argument is that the ALJ erred by failing to discuss a report apparently authored by Plaintiff's treating physician, Dr. Rushe or Dr. Rusche.  Plaintiff also asserts that the ALJ failed to provide adequate reasons for finding her testimony not entirely credible in this case.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

<u>**DISCUSSION**</u>

**A.  Missing Medical Report**

Plaintiff's main assertion is that the ALJ erred by failing to address a medical report completed by Plaintiff's treating physician on January 12, 2005.  (Ct. Rec. 9-2, pp. 4-12).

Plaintiff asserts that the ALJ failed to mention this "highly
probative report," and noted that the report is further not listed
in the exhibit list attached to the hearing decision evidencing
the fact that the ALJ either lost or misplaced said report. (Ct.
Rec. 9-2, pp. 4-5). Plaintiff argues that the ALJ should have
credited Dr. Rusche's opinions, as set forth in this missing
report, and, taking into consideration the vocational expert's
testimony regarding Dr. Rusche's report, the ALJ should have
concluded that Plaintiff is disabled. (Ct. Rec. 9-2, pp. 11-12).
The Commissioner responds that there is no evidence that the ALJ
or the Appeals Council ever received or had the opportunity to
review the report of Dr. Rusche. (Ct. Rec. 15, pp. 6-12).

Plaintiff first presented to Dr. Rusche on November 22, 2004.
(AR 242).[1] Dr. Rusche indicated that Plaintiff complained of
hearing loss, fibromyalgia, panic disorder, and major depression
and reported a usual pain level of 3 out of 5. (AR 242).
However, Dr. Rusche remarked that Plaintiff left the office with a
level of 2 out of 5 pain. (AR 242). It was noted at that time
that Plaintiff was awaiting a disability hearing. (AR 242).

On January 12, 2005, Dr. Rusche reported that Plaintiff
returned in order to complete paperwork for her attorney since she
was seeking disability. (AR 244). Dr. Rusche assessed a hearing
impairment and fibromyalgia and indicated that a form was
///

[1]Dr. Rusche was not Plaintiff's "long time attending physician" as
alleged by Plaintiff. (Ct. Rec. 9-2, p. 4). Dr. Rusche took over
Plaintiff's care only after treating physician Desanu moved to New York.
(AR 289). In fact, it appears that Plaintiff had seen Dr. Rusche on only one
prior occasion before Dr. Rusche completed paperwork pertaining to her
disability claim.

completed with regard to Plaintiff's disability claim.  (AR 244).
It is of interest to note that Dr. Rusche did not mention any
limitations in her January 12, 2005 medical report despite
indicating that she had completed the disability form for
Plaintiff.  (AR 244).  The form, which presumably is the report
that Plaintiff complains was not discussed by the ALJ, is not
included in Dr. Rusche's treatment records in the administrative
record.  Although Plaintiff alleges she has provided this missing
report of Dr. Rusche at all stages of her appeal process (Ct. Rec.
9), there is additionally no record that the ALJ ever received
this report, the Appeals Council does not document that it
received the report (AR 4-6), and, significantly, although
Plaintiff claims to have attached a copy of this report to her
opening brief in this Court, the report is not attached to her
brief, it has not been otherwise filed with this Court, and the
undersigned thus has no means of reviewing the actual document at
issue.

     Moreover, although Plaintiff claims that "the importance of
said report was fully discussed at plaintiff's hearing," (Ct. Rec.
9-2, p. 4), at the administrative hearing, Plaintiff's counsel
only indicates that his hypotheticals are based on limitations
"listed by her attending physician" (AR 286) and "from Dr. Rushi's
report" (AR 289).  At no time did Plaintiff's counsel "fully
discuss the importance" of a report completed by Dr. Rusche.  (AR
259-294).[2]  In any event, a review of the medical record in its
entirety, including the argument provided by the parties

---

[2]There is no reference to the missing report as an exhibit by
Plaintiff's counsel, nor any inquiry or discussion of the substance of that
report other than the reference already noted.

pertaining to Dr. Rusche's missing report, supports a conclusion
that the ALJ's decision should be affirmed.

On February 25, 2003, a state agency reviewing physician,
filled out a Physical Residual Functional Capacity Assessment
form. (AR 123-128). The form indicates that Plaintiff could
occasionally lift and/or carry 20 pounds, frequently lift and/or
carry 10 pounds, sit, stand or walk about six hours in an eight
hour workday and push or pull without restriction. (AR 124). No
postural, manipulative, visual or environmental limitations were
indicated. (AR 125-126).

On May 23, 2003, another Physical Residual Functional
Capacity Assessment form was completed by a state agency reviewing
physician, Morris Fuller, M.D. (AR 131-136). The form indicates
that Plaintiff could occasionally lift and/or carry 20 pounds,
frequently lift and/or carry 10 pounds, sit, stand or walk about
six hours in an eight hour workday and push or pull without
restriction. (AR 132). No postural, manipulative, visual or
environmental limitations were noted. (AR 133-134). Dr. Fuller
noted that Plaintiff indicates that she is in constant pain, but
tells her physician that medication controls her pain well and she
has no problems. (AR 135).

On June 10, 2003, Rebecca J. Alexander, Ph.D., examined
Plaintiff and essentially found her to be unimpaired from a
psychological standpoint. (AR 137-141). Plaintiff reported that
she was not currently depressed (AR 139, 141), and the results of
the mental status exam revealed an intact short, intermediate and
long term memory, fund of information and ability to calculate
math were within normal limits, abstract thinking and judgment

appeared to be intact, she could care for her personal needs and cook given a short time span for standing, her ability to understand and remember simple to detailed instructions was unimpaired, and her ability to sustain concentration and persist seemed to be unimpaired during the exam. (AR 141). Dr. Alexander diagnosed a pain disorder associated with both psychological factors and a general medical condition and assessed a global assessment of functioning ("GAF") score of 60.[3] (AR 140).

On June 25, 2003, Christina Bjornstad, M.D., examined Plaintiff and found minimal physical findings. (AR 142-143). Dr. Bjornstad indicated that Plaintiff's hearing was intact and that Plaintiff was able to hear her even when she spoke softly and even if Plaintiff was not looking at her as she spoke softly. (AR 142). Dr. Bjornstad assessed subjective pain, restlessness and depression and noted that Plaintiff was very focused on her pain and even keeps an hour-to-hour diary of her pain which she reviewed with her husband daily. (AR 143).

A Psychiatric Review Technique form was completed by a reviewing state agency medical professional, Edward T. Beaty, Ph.D., on August 21, 2003. (AR 147-160). It was noted that Plaintiff's depression was improved with medication. (AR 150). Dr. Beaty opined that Plaintiff had no restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and one or two episodes of decompensation. (AR 157).

---

[3]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

On December 10, 2003, Dr. Dasanu indicated that Plaintiff was started on medication for her depression and she was "doing great" and "not depressed." (AR 232). On February 24, 2004, Plaintiff reported to Dr. Dasanu that she "feels well." (AR 236). Plaintiff indicated that her depression was in very good control, she was not depressed at that point and she was less anxious with less panic attacks. (AR 236). Dr. Dasanu noted that Plaintiff's fibromyalgia was controlled with Tylenol and that Plaintiff was able to care for pets and perform housework. (AR 236). On April 26, 2004, Plaintiff reported to Dr. Dasanu that she was walking and exercising. (AR 239). It was noted that her muscle tenderness was much less and she appears to hear pretty well using her hearing aids. (AR 239). No tender points were found on exam. (AR 239). On June 1, 2004, Plaintiff reported to Dr. Dasanu that she "feels well." (AR 241). Dr. Dasanu indicated that Plaintiff complained of mild bloating but "otherwise she's fine." (AR 241).

On August 31, 2004, Plaintiff presented to Celso Chavez, M.D., and indicated she was "doing well with her current medication regimen." (AR 250-251). Dr. Chavez noted that Plaintiff had no depression, anxiety or agitation. (AR 251). However, on October 11, 2004, Plaintiff reported to the same office and complained to Terry Smith, M.D., of constant shoulder pain. (AR 252-253). X-rays were negative and she was referred to physical therapy. (AR 253). On October 25, 2004, Plaintiff returned to Dr. Smith requesting that a disability form be completed. (AR 254-255). Plaintiff reported that she had been going to physical therapy and felt it was helping. (AR 254). ///

Dr. Smith noted that Plaintiff's physical exam revealed a well nourished, well hydrated individual in no acute distress. (AR 254). Dr. Smith assessed that Plaintiff's shoulder pain had improved. (AR 254). As noted by the Commissioner, there is no evidence that Dr. Smith completed the requested disability paperwork. (Ct. Rec. 15, p. 10).

According to Plaintiff, Dr. Rusche's missing report indicates that Plaintiff suffers from several symptoms as a result of fibromyalgia, she suffers significant bilateral pain in several locations throughout her body, her prognosis was poor, her pain would frequently interfere with attention and concentration, she would be moderately to markedly limited in her ability to deal with work stress, she could sit, stand or walk for no more than 15 to 30 minutes intervals and she would miss more than three days of work per month. (Ct. Rec. 9-2, pp. 5-7).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes*, 881 F.2d at 751. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. *Allen*, 749 F.2d at 579. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Nevertheless, a review of Plaintiff's recitation of Dr. Rusche's findings in the missing report reveals limitations entirely inconsistent with the substantial weight of

the record evidence as discussed above.  (Ct. Rec. 9-2, pp. 5-7).
No other medical professional of record has listed restrictions as
significant as those apparently listed in the missing report.   In
fact, a review of the record reveals that Plaintiff's physical and
mental symptoms were fairly well controlled by medication.  *Supra*.
Although the missing report is not addressed by the ALJ, had it
been before the ALJ, it is clearly inconsistent with all other
medical evidence of record.  Accordingly, the undersigned finds
that the ALJ did not err by failing to refer to the missing report
in his decision.  The ALJ's RFC determination is in accord with
the substantial weight of the record evidence and free of error.

**B.  Credibility**

Plaintiff also argues that the ALJ erroneously determined
that she was not credible.  (Ct. Rec. 9-2, pp. 9-11).

It is the province of the ALJ to make credibility
determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.
1995).  However, the ALJ's findings must be supported by specific
cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
1990).  Once the claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit his testimony as
to the severity of an impairment because it is unsupported by
medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:
rather the ALJ must identify what testimony is not credible and
///

what evidence undermines the claimant's complaints." *Id.; Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ considered the evidence and testimony of record and determined that Plaintiff was not totally credible. (AR 19-21, 22). The ALJ indicated that he was influenced by the inconsistency between the bulk of the medical records and Plaintiff's testimony and the fact that the evidence failed to demonstrate that she is totally disabled. (AR 19). He found that the records from her treating and consulting physicians did not support her opinion that she is unable to perform any work activities. (AR 19).

In support of his finding that Plaintiff is not totally credible, the ALJ indicated that, although Plaintiff testified to significant limitations in her ability to sit and stand, that she is unable to vacuum, that she has flu-like symptoms and constant fatigue, and that her memory is impaired or affected, the constant flu-like symptoms are not reported to her examining doctors, she reports being able to garden and care for pets, it is noted that she is walking and that exercises help her out with her fibromyalgia, she reports she is not depressed or anxious and is not having any trouble with significant pressure points, her back pain is much improved, and it is noted she is doing well after discontinuing her opioids. (AR 19). The ALJ also indicated that Dr. Bjornstad noted Plaintiff's physical findings were very minimal and her deafness is clear and documented but she is able to compensate for her deafness quite well, and records from her treating physician indicate that she is doing great and is not depressed. (AR 19). With regards to her fibromyalgia, the ALJ

indicated that Plaintiff was noted to be taking Tylenol on only an
as needed basis, it was noted that she had not had much muscular
pain lately, and, on February 24, 2004, she reported that she has
good control of her pain. (AR 19). The ALJ found that Plaintiff
described daily activities that are not limited to the extent one
would expect, given her complaints of disabling symptoms and
limitations, as she has reported to spending time with her husband
and mother, crocheting, walking, reading, watching television,
cooking simple recipes, and doing the laundry and dishes. (AR 19-
20). The ALJ noted that, on November 13, 2003, Plaintiff reported
normal energy, motivation, and concentration, no excessive
tearfulness, no feelings of guilt or worthlessness, and normal
appetite and sleep. (AR 20). The ALJ indicated that, although
Plaintiff alleges difficulty with hearing, missing two out of six
words spoken, Dr. Bjornstad notes that Plaintiff's hearing is
intact and that she is able to hear even when speaking softly and
when Plaintiff is not looking at her when she speaks softly. It
is also noted that Plaintiff has had hearing difficulties since
birth but that she has been able to complete school and even
additional college education and maintain work without apparent
problems stemming from her hearing impairment. (AR 20). Finally,
the ALJ indicated that it appears that Plaintiff goes to her
physicians to document her disability rather than primarily for
care or treatment. (AR 21).

Based on the foregoing, to reject Plaintiff's allegations of
total disability, the ALJ appropriately noted a lack of supporting
objective medical evidence, *Bunnell v. Sullivan*, 347 F.2d 341, 345
(9th Cir. 1991), general inconsistencies with her allegations, her

reports and the evidence of record, Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986), inconsistency with her alleged level of functioning and her reported daily activities, *Fair*, 885 F.2d at 603, and evidence of disability seeking behavior.  Accordingly, after reviewing the record, it is apparent that the ALJ provided, specific, clear and convincing reasons, supported by the substantial weight of the record evidence, for finding Plaintiff not entirely credible.  The Court finds that the ALJ did not err by concluding that Plaintiff was not totally credible in this case.  (AR 22).

<u>**CONCLUSION**</u>

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Based on the foregoing, the undersigned concludes that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 14**) is **GRANTED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___7th___ day of August, 2006.

_____s/Michael W. Leavitt_____
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE

- 19 -